0272901 Perez-Batista v. Ashcroft is submitted on the briefs. We'll now take 0250555 and the other numbered United States v. Kellum appeals. Now we have this calendared for 20 minutes. Good morning. Good morning, Your Honors. May it please the Court, my name is Jonathan Libby and I appear on behalf of the appellant cross appellee, Duane Kellum. Unless the Court has any objection, I'd like to focus my argument this morning on the concealment money laundering count as well as the government's cross appeal on acceptance of responsibility. With respect to concealment money laundering, we'd ask that this Court reverse Mr. Kellum's conviction because the government provided no proof of an intent to conceal the nature, source, or ownership of the illegal proceeds. All Mr. Kellum did was withdraw money to pay personal expenses. Was there anything in the record that he used some of the money from the, was it the Fidelity account, to buy a certified check at Wells Fargo to pay his bail? That's correct. Was there any requirement or anything in the record that the Court required a certified check to pay his bail? They wouldn't take his personal check? No, there's nothing in the record. In fact, the district court does have a requirement and I think this Court can presume that Judge Snyder was aware of her own court's requirements, which does say that in order to post bail, you must present either a certified check or a money order. They will not accept a personal check or cash. And that's available on the district court's website as well. Certainly the government did not provide any evidence to prove the contrary. And in fact, they rely on the fact that they argue, well, Mr. Kellum could have simply gotten a check cut from Fidelity Investments, one of the manual checks that he often did get from them, made payable to the district court and that would have been sufficient. In fact, that would not have been sufficient because that would not qualify to pay the bail. So in fact, all Mr. Kellum did was he took money from the Fidelity Investments account and withdrew it the only way he could, which was to go to Wells Fargo, where the money was being held, and take the money out in the form of both cash and certified checks, one of which he used to pay his bail in the district court. And since that's a personal expense, many circuits have certainly held that payment of personal expenses out of these illegal proceeds is not in fact concealment money laundering. I mean, one way that perhaps this could have been concealment money laundering would have been if, say, because Mr. Kellum paid his bail using a cashier's check for $5,000 that he got from Wells Fargo, as well as a $5,000 cashier's check from his father. Was that specific argument made to Judge Snyder, specifically that, look, he had to get a cashier's check because he couldn't have paid his bail with a check drawn on the Fidelity account? No, that argument was not made. But as I said, the government had the burden of proving that that's what he had to do. They had the burden of showing that he had an intent to conceal. Well, it seemed like they may have met their burden, or at least the burden of going forward by showing, look, the guy has money in Fidelity, and he, instead of taking a check from Fidelity to the court, he stops off at Wells Fargo and converts it into a cashier's check. And then it seemed like you would then have a good opportunity to explain, well, look, he had to do that because they wouldn't take the Fidelity check. But that doesn't look as though that was presented to the judge. That was not presented to the judge, and perhaps it should have been. I certainly would concede that. But that also assumes that going to Wells Fargo was really an additional step that suggested concealment on Mr. Kellum's part. Mr. Kellum very often would have these go into Fidelity Investments and get these manual checks. He, in fact, there is evidence to the record that he discussed this with one of the customer service representatives there and said he was doing that because that's the easiest and fastest way to get the money, because he can then simply walk over to Wells Fargo, where the money is held, part of the process to get the money out of the account and get the money immediately, without having to deposit the check like any other check and wait for the money to clear in a different account. This was not a situation where he was, you know, depositing it into an account in someone else's name and then withdrawing the funds. That, I think, would have been concealment. If he had taken the Fidelity check was on Kellum's account with Fidelity, correct? Well, it came out of Kellum's account. But, in fact, if you look at the check itself and Does it bear any indication that it was Kellum? Or is it just fidelity? No. If you look at the check itself, and I have it in the government's excerpts on page 66, the check itself, it's a check from Fidelity Brokerage Services made out to the order of Duane Kellum. It's So it names him, right? Well, it does name him, yes. It's a check that's made payable to him. And then he endorsed the check over to Wells Fargo to get the certified check in cash? I don't know that I would say he endorsed it over to Wells Fargo. Wells Fargo is where all of Fidelity Investments' money is held. It's Fidelity's bank. So you can't go into Fidelity and withdraw the money directly from Fidelity. The Fidelity check bore Kellum's name? Yes. It was made payable to Mr. Kellum. And in order to negotiate that check, he had to somehow pass title to the paper to Wells Fargo by endorsing it or otherwise presenting it, right? Or depositing it in his account or something. What I'm saying is that there was a paper trail that was Kellum. The paper trail certainly was all Kellum, yes. That's certainly true. And I think if one looks at the check, I think it's pretty clear that the district court, I don't think, could have accepted this. This is certainly not a cashier's check. This is a check, even if it were made out to the district court, is a check from a company called Fidelity Broker Services. So Fidelity is the drawer of that check? Yes. Fidelity is the drawer of that check? Yes. And the bank is Wells Fargo? Yes. And the payee is Kellum? Yes. In this case, the payee was Kellum. Kellum took the check payable to himself to Wells Fargo, like Judge Baez says, cashed the check and had it broken out into a... He had it broken out into two certified checks. One made payable to the district court. One made payable to a law firm. When he took the checks out, they were from an energy capital account, right? Yes. At Fidelity, yes. But did those checks, who were those checks made payable to? Like, were they just energy capital, payable to energy capital? Well, they were Fidelity checks. Now, there are two sets of checks that came up in the bank that he could write checks from. But the ones that, whatever he used to get the money out of Fidelity to take it to Wells Fargo, what was that? That was a Fidelity investments check. Payable to? Payable to Duane Kellum, which is... But not to energy capital? No. The way the process worked, he could, as the head of energy capital, he could give a letter to Fidelity and ask them to make a check payable to whomever. And he asked that they make it payable to Duane Kellum. So, based on what took place here, he simply, he did not conceal the proceeds that came from the Fidelity account. It was completely open and notorious. It was easily traceable. And it was simply used to pay personal expenses, which courts have said is, does not qualify for conviction for concealment money laundering. So we would ask that this court reverse that conviction. Now, with respect to the acceptance or responsibility issue, which is the government's cross-appeal, we'd ask this court to afford Judge Snyder's decision, the great deference that it's entitled to, and affirm the adjustment. The government concedes that the sentence would be the same if Mr. Kellum had been sentenced separately on the two indictments and received concurrent time, which Judge Snyder did not, had it been done that way. So essentially, what Judge Snyder did was save judicial resources, and without having to do two different sentencing hearings, she had a single sentencing hearing, gave what she believed to be a just sentence by giving credit for acceptance on the one, not really deciding whether or not he had going to give a sentence accordingly. The government seems to believe that it was a requirement that they be joined and then grouped, but this Court's decision in deuterios, I don't believe, says that. It seems to suggest that it's permissible for the cases to be joined for sentencing, but it's not required. And, in fact, there's a case that was cited by the government in their reply brief, a which notes that the district court always retains the discretion to decide whether or not to consolidate offenses for joint sentencing. Here, there was no harm, no foul. Mr. Kellum received the sentence that he would have received had this been done separately, and the sentence should be affirmed with respect to that. Speaking of sentencing, let me just ask you again about the money laundering. If you're right on that and we reverse on the money laundering count, what will that do to his sentence? How much does it – is it appreciably affected at all? It does appreciably affect it, Your Honor. Without the money laundering count, it would reduce – with respect to that indictment, it would reduce the offense level from a 21, in fact, to a 16, reduce the sentencing range from 77 to 96 months to 46 to 57 months. On the money laundering, I have in mind a case called U.S. v. Teckle. Yes. Which you're probably familiar with. It has got a statement in it that the necessary concealment is that of the source of the funds and not of the identity of the money launderer. That's correct. Okay, if that's the law, then why isn't he – why isn't there sufficient evidence on money laundering here? Because although he could be identified that, you know, the check was made out to him, that he's concealing the Fidelity account. Well – It's an account that he's engaging in fraud. Because I don't believe he, in fact, is, in fact, concealing the Fidelity account. He's merely cashing the Fidelity check at the only place where he could cash the Fidelity check. He had to go to Wells Fargo to cash it. So there, in fact, was no concealment. And in Teckle, the court distinguished between situations where a defendant has engaged in various commercial transactions with cash that happened to be the proceeds, with transactions that were engaged in for the purpose of concealing the assets. Is there any indication on the Fidelity check that the individual account of the energy company is being debited? It does not appear to be on the face of the check itself. I don't have in front of me – there may have been, in fact, the attachment to the I don't believe it's on the – And the voucher was not delivered over to Wells Fargo Bank and became part of their records. I don't believe so. Though, of course, in order for Mr. Kellams to cash the check, Wells Fargo had to confirm the account with Fidelity Investments, because they were taken from their account. Is there any record of they, in fact, did confirm it? I don't recall in the record if there is – Are there good funds here? Well, on the face – well, that's correct. That's correct. What exhibit number is the check? The check is 8A. In the government's exhibit book, it's on page 66. I believe it's also included in our excerpts. And if the Court has no further questions, I preserve the balance. Thank you, Mr. Kellams. Thank you. Good morning. May it please the Court, Gregory Weingart on behalf of the United States. I, too, unless the Court has any questions about the other issues raised, will focus on the issues that – that Kellams focused on, the money laundering and the government's cross-appeal. To begin by answering the question that was asked at the end, if you have the government's excerpt at page 66, there's a box up in the corner that has a Z and then a number. That's the account number for the energy capital account. So it does refer back to – if one did have this check, one would see that he had an account at Fidelity and what that number was. With regard to the issue of whether or not a check from Fidelity, this instrument, would have been sufficient to post bail, that was never an argument that was raised below. And I submit, I don't believe that's an argument that's even made in the briefs. Appellant's reply brief, as a matter of fact, appears to concede that, in fact, a check from Fidelity would have been sufficient to post bail. It says, the fact Mr. Kellam could have written a check directly from the Fidelity investment account to post bail misses the point, and then goes on to explain why I believe it misses the point. So I don't believe that there's anything in the record that would suggest that a check, this official check from Fidelity – remember, this is not his check-writing privileges, but this is one that he has to go in, an official check that's prepared at the counter at Fidelity, if it was made payable to the clerk of the district court, that they wouldn't have taken it. And if they had, they would have had a check that had A, Kellam's name, and B, the account number for energy capital, which would show the provenance of the funds. Correct. It would have shown that he had an account at Fidelity, and that was where the money was coming from, and obviously that would have raised and stirred our interest. As a matter of fact, the only reason that we found out about the fact that he had an account at Fidelity – and remember, the timing of these events, he's deposited a $54,000 check into the Fidelity account not more than a week or so before he gets arrested and needs to post bail. He's not particularly interested in the government knowing that there's another fraud going on involving energy capital, which is a subject of the arrest that he's already in the dock for, that those funds are out there and that he's engaged in additional crimes. And there certainly was sufficient evidence for Judge Snyder to find that he did intend to conceal the provenance of the funds. I – Judge Gould referred to the Teckle case, and the fact that Mr. Kellam's name is on this and so forth, I believe under this Court's precedence, that just doesn't make any difference, because the intent to conceal is the intent to conceal the source of the funds, not the identity of the particular individual. And unless the Court has any other questions on the money laundering, I'll move on to the acceptance argument. With regard to the acceptance arguments, there were – obviously, there were two cases. There was the Fidelity case in which Mr. Kellam went to trial. There was the Buss case in which he pleaded guilty after his conviction in the Fidelity case. I thought these were separate cases and they were just consolidated for sentencing. Is that right? That is correct, because there was a – If they're separate cases, why shouldn't the judge be able to deal with each of them independently as to whether there's an acceptance of responsibility of the charges in that case? Well, I'm not suggesting that she could not have. I guess what I wanted to say was there's an argument that's raised in the briefs as to whether or not – what the factual state of the record was as to whether or not he accepted responsibility in one case, accepted responsibility in the other case. And I believe that the record is clear that he did not accept responsibility in the Fidelity case, not only just as a factual matter because he went to trial. He continues to litigate the sufficiency of evidence on appeal with regard to those convictions. But if one looks at the district court statements in context, it's clear that she's saying she's found that he's accepted responsibility for Buss, but not for Fidelity. And so then the question becomes, how do those cases get grouped? Because under this Court's Ginn case, if one does not accept responsibility for all the counts of conviction, then an adjustment for acceptance of responsibility is not appropriate. So the question becomes, should they be grouped or not grouped? And for the cases and the reasons that the government has cited in its brief, there was a legal obligation for those cases to be grouped because I'm. It was a case where he pled to one count of an indictment, but not to the other count of the indictment. That is correct. In this case, you have two separate indictments. So his plea of guilty to one of them saved you a trial. That's correct. Isn't that a big difference between that and Ginn? Well, it's a difference in the sense that it's not. They didn't have to impanel another jury. They didn't have to put on another trial. They didn't occupy another courtroom. That's correct, but the defendant is still getting a benefit. And remember, I'm referring to the guidelines. I'm talking about the 3D1.2 says. He's getting a benefit, but he's earned a benefit by sparing you a trial. But he still would get a benefit because the way that it was argued to the district court by the defendant himself was that these cases should be grouped because that way he would be absolutely assured of the fact that the judge wouldn't run any of it consecutive. It would all be concurrent. And the way it ended up is he basically got the bus case for free. There was no incremental adjustment at all, which the guidelines suggest there should be an incremental adjustment when there are two separate courses of criminal conduct over a different span of time. And if one reads Section 3D and Section 5G together, when sentences imposed for two separate matters at the same time, especially in a fraud matter where the loss is what determines it, there's a small incremental adjustment upward. And the defendant was obviously interested in only seeing that small incremental adjustment as opposed to the possibility of there being there was an acceptance of responsibility that the two matters would be put together. So the defendant gets some benefit for it. But the way that the district court did it is violated both of the guidelines regime and once one looks past the guidelines regime, the Ginn case. Let me ask you a variant of the question I asked, Mr. Libby. If you're right about this, what does that do to the sentence here? With regard to the acceptance, he would just be two levels higher. And I... It would be 92 to 115. So it would be, his low end would be seven months higher than the 85 months that he did receive, which is a mid-range sentence that the judge gave him. A seven-month difference, that's correct. Unless the Court has any other questions with regard to the argument I submitted. Thank you. Your Honors, unless the Court has any further questions, I would submit. Very well argued case by both sides. The case is submitted.
judges: Silverman, Gould, Bea